IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| ISAAC ROJAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION V-07-85 |
| MICHAEL J. ASTRUE, | § | |
| Commissioner, | § | |
| Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Plaintiff Isaac Rojas' ("Plaintiff") Brief in Opposition of Commissioner's Decision (Dkt. No. 23)[1] and Defendant Michael J. Astrue's ("the Commissioner") Motion for Summary Judgment (Dkt. No. 24). After consideration of the motions, record, and applicable law, the Court finds that Plaintiff's motion should be DENIED and Defendant's motion should be GRANTED.

**Background**

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to review the decision of the Commissioner denying Plaintiff's application for supplemental security income. Plaintiff was 56 years old at the time he applied for benefits. (Tr. 72.)[2] He has former work experience as a pipefitter and welder, as well as a high school education, military experience, and two years of college. (Tr. 30, 90 & 95.)

Plaintiff filed his application for benefits on January 13, 2004, alleging that he was disabled since December 15, 2003 due to post-traumatic stress disorder (PTSD), depression,

---

1. The Court will construe Plaintiff's brief as a motion for summary judgment.
2. Citations to "Tr." refer to the administrative transcript. (Dkt. No. 20.)

nausea, insomnia, and pain from osteoarthritis. (Tr. 30, 72—74, 89, 122, 132 & 270—72.) His claims were denied by the Commissioner and again on reconsideration. (Tr. 30, 40—46 & 49—53.) He had a hearing before an Administrative Law Judge ("ALJ") on November 2, 2005. (Tr. 30 & 361—406.)   The ALJ issued an opinion on March 27, 2006 finding that Plaintiff was not under a disability within the meaning of the Social Security Act. (Tr. 27—37.)  The Appeals Council denied Plaintiff's request for review on April 4, 2007, and the ALJ's determination became the final decision of the Commissioner. (Tr. 13—15.) Plaintiff filed this action on October 7, 2007 seeking review of the Commissioner's final decision. (Dkt. No. 1.)

## Standard

The Court's review of the Commissioner's final decision to deny disability benefits is limited to two issues: (1) whether substantial record evidence supports the decision, and (2) whether proper legal standards were used to evaluate the evidence.  *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).

If the findings of fact contained in the Commissioner's decision are supported by substantial evidence, they are conclusive and this Court must affirm. The widely accepted definition of "substantial evidence" is more than a mere scintilla, but less than a preponderance. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).   "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).   In applying this standard, the Court is to review the entire record, but it may not reweigh the evidence, decide the issues de novo, or substitute the Court's judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).  Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the Court overturn it.

*Johnson v. Bowen*, 864 F.2d 340, 343—44 (5th Cir. 1988).  The Court reviews the legal standards applied by the Commissioner de novo.

To claim entitlement to disability benefits, a claimant must show that he was disabled on or before the last day of his insured status.  *Demandre v. Califano*, 591 F.2d 1088 (5th Cir. 1979).  The legal standard for determining disability under the Act is whether the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that the Commissioner should evaluate disability claims according to the following sequential five-step process:

(1) A claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are.

(2) A claimant will not be found to be disabled unless he has a "severe impairment."

(3) A claimant whose impairment meets or is equivalent to an impairment listed in an Appendix to the regulation will be considered disabled without the need to consider vocational factors.

(4) A claimant who is capable of performing work he has done in the past must be found "not disabled."

(5) If the claimant is unable to perform his previous work as a result of his impairment, then factors such as age, education, past work experience, and residual functioning capacity must be considered to determine whether he can do other work. *See* 20 C.F.R. § 404.1520(b)—(f); *see also Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

To be entitled to benefits, a claimant bears the burden of proving that he is unable to engage in substantial gainful activity within the meaning of the Social Security Act. *See Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The claimant must show that he suffers from a mental or physical impairment that not only renders him unable to perform his previous work, but, given his age, education, and work experience, prevents him from engaging in any other kind of substantial gainful work that exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. *Johnson v. Harris*, 612 F.2d 993, 997 (5th Cir. 1980). However, if the claimant can show that he can no longer perform his previous job, the burden then shifts to the Commissioner to show that there exists some other form of substantial gainful employment the claimant can perform. *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980). By judicial practice, this translates into the claimant bearing the burden of proof on the first four of the above steps and the Commissioner bearing the burden on the fifth. *See Brown*, 192 F.3d at 498; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The analysis stops at any point in the five-step process upon a finding that the claimant is or is not disabled. *See Greenspan*, 38 F.3d at 236.

## Analysis

Following Plaintiff's November 2, 2005 hearing, the ALJ evaluated Plaintiff's disability claim according to the aforementioned five-step process and issued the following Findings:

1. The claimant meets the non-disability requirements for period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
3. The claimant's chronic neck and lumbar pain, anxiety, and anti-social disorder are considered "severe" based on the

4

>    requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c).
>
> 4. These medically determinable impairments do not meet or medically equal any of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> 5. The claimant's allegations regarding his limitations are not totally credible, for the reasons set forth in the body of the decision.
>
> 6. The claimant has the residual functional capacity to lift and carry a maximum of ten pounds frequently and twenty pounds occasionally; to stand and/or walk for no more than six hours per eight-hour work day; to sit for no more than six hours per eight-hour work day; and to stoop and crouch no more than occasionally. Further, the claimant is moderately limited in his ability to maintain sustained concentration.. [sic]
>
> 7. The claimant is unable to perform any of his past relevant work. (20 CFR §§ 404.1565 and 416.965).
>
>    . . .
>
> 10. The claimant has transferable skills from skilled work previously performed as described in the body of the decision. (20 CFR §§ 404.1568 and 416.968).
>
> 11. Using Medical-Vocational Rule 202.7 as a framework for decision-making, there are a significant number of jobs in the national economy that the claimant could perform. Examples of such jobs include work as an electrical-component assembler or utility meter reader, each of which is represented by many thousands of jobs in both the national and Texas economies.
>
> 12. The claimant has not been under a "disability," as defined in the Social Security Act, at any time from the alleged onset date through the date of this decision. (20 CFR §§ 404.1520(g) and 416.920(g)).

(Tr. 36—37.)

Plaintiff now presents three grounds for reversal, contending the decision of the Commissioner is not based upon substantial evidence because:

(1)    The residual functional capacity assigned by the ALJ does not contain all of the limitations reasonably expected from Plaintiff's impairments.

(2)     The decision improperly discounts Plaintiff's credibility regarding his subjective complaints.

(3)     The decision fails to give proper weight to evidence showing that Plaintiff's medical impairments erode any transferable skills remaining from his past work.

### A. Plaintiff's Residual Functional Capacity

Plaintiff first argues the ALJ erred by assigning a residual functional capacity (RFC)[3] that did not contain all of the limitations reasonably expected from Plaintiff's impairments. Specifically, Plaintiff contends that "the ALJ should have found a 'severe' non-exertional impairment for depression" and "further failed to consider Plaintiff's diagnosis of Hepatitis C and the treatment prescribed for that illness." (Dkt. No. 23 at 7.) According to Plaintiff, had the ALJ considered Plaintiff's depression and hepatitis C in combination with Plaintiff's severe chronic neck and lumbar pain, anxiety, and anti-social disorder, he should and/or would have concluded that Plaintiff would not have a reasonable chance of keeping a job if hired.

Contrary to Plaintiff's assertion, the ALJ did consider Plaintiff's depression, and there is substantial evidence in the record to support his conclusion that Plaintiff's condition did not meet the severity required under the Social Security Act. The ALJ noted that while Plaintiff was "diagnosed with single-episode major depression," this condition "responded well to medication, and during [Plaintiff's] December 15-22 2003 hospital admission, by the time of his discharge his mental status showed him to be 'easily engageable,' with . . . euthymic mood . . . ." (Tr. 33 & 173.)[4] The ALJ also cited evidence showing that on December 19, 2003, Plaintiff's treating physician, Dr. King, indicated Plaintiff was doing better, with "an agreeable manner and

---

   3. "Residual functional capacity" (RFC) refers to the greatest capacity of an individual to do work despite any limitations. 20 C.F.R. § 416.945(a)(1).
   4. "Euthymic mood" refers to "a mood within the temperate range, without the characteristics of depressed mood, dysphoric mood, elevated mood, irritable mood, or any other strongly affective mood." ANDREW M. COLEMAN, A DICTIONARY OF PSYCHOLOGY (2001).

improvement in his depression." (Tr. 33 & 187.) Certain medical records showing Plaintiff was depressed also show Plaintiff was drinking up to one-half bottle of vodka each night (Tr. 167, 199, 204 & 207), and the ALJ recognized that on December 23, 2003, Dr. King diagnosed Plaintiff only with PTSD and "noted that the claimant was no longer drinking." (Tr. 33 & 184.) Finally, the ALJ considered Dr. Fisher's consultative examination of Plaintiff in February 2004. (Tr. 33.) Dr. Fisher concluded Plaintiff had a GAF of 55,[5] was only "mildly depressed," and was "'reasonably good now that he is getting the correct treatment.'" (Tr. 33 & 217—19.)

Plaintiff also claims the ALJ erred in failing to consider Plaintiff's diagnosis of hepatitis C. At the time of his hearing before the ALJ, Plaintiff was in the early stages of this illness and was awaiting treatment for this condition. (Tr. 365.) Because medical impairments that reasonably can be remedied or controlled by medication or therapy are not disabling, *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988), the Court cannot conclude the ALJ erred in finding Plaintiff's depression and hepatitis C were not disabling conditions under the Social Security Act. Plaintiff's first ground for reversal is without merit.

### B. Plaintiff's Credibility

Plaintiff next argues that the ALJ erred by improperly discounting Plaintiff's credibility regarding his subjective complaints. Specifically, Plaintiff claims "the ALJ seemingly contradicts himself when he cites numerous recorded medical diagnoses of depression and related symptoms (R.31-32), yet gives them no consideration whatsoever in his evaluation." (Dkt. No. 23 at 8.)

---

5. The ALJ noted that "according to the *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV, 1994), a Global Assessment Functioning (GAF) of 51 to 60 indicates only moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." (Tr. 33 n.2.)

7

As explained in Part A, *supra*, it is clear from the record that the ALJ considered Plaintiff's depression at length. The ALJ also explained in detail why he found Plaintiff's credibility to be lacking:

> [Plaintiff] has asserted disability from all substantially gainful work activity since December 2003, yet he also testified to a relatively robust slate of activities of daily living, including walking to the store, a distance of about one to two blocks, about twice per day, riding the bus, walking three or four blocks to his doctor's office, doing chores, and cooking breakfast. And during his February 2004 psychiatric examination he told Dr. Fisher that he takes care of his own hygiene and grooming needs without difficulty, that he could drive a car and travel by himself, that he made independent plans, and helped around the house, including mowing the yard, cooking, cleaning, doing laundry, and other minor chores.

(Tr. 33.) The performance of daily activities such as these is relevant when evaluating the credibility of a plaintiff's disability claims. *See Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir. 1990). The ALJ then noted further inconsistencies in Plaintiff's testimony:

> [N]otwithstanding his hearing testimony that he has problems getting along with other people, he also told Dr. Fisher that he socializes with friends and relatives. And during an April 2004 mental status examination he reported that he was considering relocating to Houston to attend a technical school, which suggests his own belief in a level of functional ability greater than he has alleged and also consistent with the ability to sustain work activity.

(Tr. 33.)

Credibility determinations are entirely within the province of the ALJ, and the ALJ need not give greater weight to a plaintiff's subjective complaints than contrary objective medical evidence. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). The Court defers to the credibility assessment of the ALJ in this case; therefore, Plaintiff's second ground for reversal is also without merit.

### C. Weight of Evidence

Plaintiff finally argues the ALJ erred by failing to give proper weight to evidence showing that Plaintiff's medical impairments erode any transferable skills remaining from his

past work. Specifically, Plaintiff alleges the ALJ improperly gave at least one of Plaintiff's treating physician's opinions "little weight" and "took statements by the treating physicians out of context and failed to consider the record as a whole," such that he failed to acknowledge "the steady decline of Plaintiff's condition over time." (Dkt. No. 23 at 14.) Additionally, Plaintiff contends, the ALJ erred in failing to "inquire of the vocational expert (VE) how the side effects from Plaintiff's anti-social demeanor and other residuals of PTSD would erode any transferable skills he might have acquired in his past work." (*Id.*)

Plaintiff first complains that the ALJ gave "little weight" to the opinion of one of Plaintiff's treating physicians, Dr. Elizabeth John, without following the six-factor analysis set out in 20 C.F.R. section 404.1527(d). *See Newton v. Apfel*, 209 F.3d 448, 456—58 (5th Cir. 2000) (requiring, in the absence of competing first-hand medical evidence, that the ALJ consider each of the § 404.1527(d) factors in evaluating the medical opinion of a treating physician). Dr. John had opined in December 2004 and again in June 2005 that Plaintiff was "not able to work now" and "unable to work," respectively. (Tr. 288 & 290.) The ALJ need not take the treating physician's word as gospel, but can reject it for good cause. *See Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). This is especially true here, as the question of Plaintiff's ability to work is solely reserved for the Commissioner. *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) ("Assuming arguendo that the ALJ did not consider the six factors, he was not required to do so with respect to the doctor's conclusion that Frank was unable to work. The ALJ must consider the six factors in subsection (d) only with respect to the *medical opinions* of treating physicians." (emphasis in original)); 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Furthermore, if the ALJ had given greater weight to Dr. John's opinion, he still

would have concluded that Plaintiff was not disabled, as Dr. John opined that Plaintiff's "disability" due to PTSD "is not permanent and is expected to last 6 months or less." (Tr. 288 & 290.) To be disabling under the Act, an impairment must be expected to last 12 months. 20 C.F.R. §§ 404.1509, 416.909.

Plaintiff next argues the ALJ improperly "took statements by the treating physicians out of context and failed to consider the record as a whole." Plaintiff has failed to cite any specific statements the ALJ allegedly took out of context. Furthermore, the Court is satisfied the ALJ considered the record as a whole, as he evaluated opinions given by Drs. King, Fisher, Siddiqi, Burrow, and John; administrative findings of fact made by state agency medical physicians and other consultants; and statements made by Plaintiff to various treating physicians as well as during his hearing. (Tr. 31—35.)

Finally, Plaintiff contends the ALJ improperly failed to ask the VE how side effects from Plaintiff's anti-social demeanor and PTSD would erode any transferable skills from his past work. Under Fifth Circuit precedent, hypothetical questions posited by the ALJ to the VE must include functional limitations supported by the evidence and recognized by the ALJ. *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002). Here, the ALJ concluded that Plaintiff's PTSD was not a disabling condition, and therefore did not err in failing to pose hypothetical questions concerning PTSD. While the ALJ did not pose any hypotheticals regarding Plaintiff's anti-social disorder, the VE testified in response to another question that the positions of utility meter reader and assembler of electrical products "are in essence away from any immediate interaction with co-workers. Utility meter reader is really out on their own most of the time." (Tr. 402.) Furthermore, Plaintiff had the opportunity to cross-examine the VE and pose his own hypothetical questions, and has presented no evidence to support his contention that had the ALJ

10

posited the above questions, "a reliable VE would testify that there were no transferable skills." (Dkt. No. 23 at 14.)

Plaintiff's final ground for reversal is also without merit.

## Conclusion

For the reasons stated above, Plaintiff's Motion for Summary Judgment (Dkt. No. 23) is DENIED; the Commissioner's Motion for Summary Judgment (Dkt. No. 24) is GRANTED; and the decision of the ALJ is AFFIRMED.

It is so ORDERED.

Signed this 5th day of March, 2009.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE